UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QIWEI WENG,<br><br>                              Petitioner,<br><br>                    -v.-<br><br>KENNETH GENALO et al.,<br><br>                              Respondents. | 25 Civ. 09595 (JHR)<br><br>OPINION & ORDER (CORRECTED) |

JENNIFER H. REARDEN, District Judge:

Before the Court is Petitioner Qiwei Weng's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1 (Pet.).  Petitioner seeks release from detention or, in the alternative, a bond hearing before an immigration judge.  Pet. ¶ 32.  He argues that his detention is governed by Section 236 of the Immigration and Nationality Act (the "INA"), codified at 8 U.S.C. § 1226(a)(2).  Respondents maintain that Section 235 of the INA, codified at 8 U.S.C. § 1225(b)(2), controls.[1]  Having considered the statutory text and other relevant authorities, the undisputed facts of this case, and the parties' submissions and oral arguments, the Court concludes that Petitioner's detention is governed by Section 1225.  Accordingly, the petition is denied.

## I.   BACKGROUND

### A. Factual Background

"The facts described below are drawn from [the] petition, [and] affidavits and documents submitted in support of the Government's return."  *Michalski v. Decker*, 279 F. Supp. 3d 487, 491 (S.D.N.Y. 2018) (denying writ of habeas corpus).  These facts are undisputed.

---

[1] The Court may refer to these provisions as "Section 1225" and "Section 1226" or by citing to the INA or the United States Code.

Petitioner Qiwei Weng is a nineteen-year-old citizen of the People's Republic of China. Pet ¶ 1; ECF No. 7-5 (2024 Record) at 1. On or about November 9, 2024, a Border Patrol Officer with U.S. Customs and Border Protection ("CBP") "encountered Petitioner and determined that he had unlawfully entered the United States at or near Tecate, California." ECF No. 8 (Dawson Decl.) at ¶ 4; Pet. ¶ 1. After being detained overnight, Petitioner was served with a Notice to Appear ("NTA") charging him as "removable pursuant to Immigration and Nationality Act ('INA') § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled." Dawson Decl. ¶ 5; ECF No. 7-1 (NTA); Pet. ¶ 1. Petitioner was then "released on his own recognizance as a conditional parole pursuant to 8 U.S.C. § 1226(a)(2)(B) due to lack of bed space." Dawson Decl. ¶ 6. CBP served Petitioner with a Notice of Custody Determination (Form I-286), ECF No. 7-2; Warrant for Arrest of Alien (Form I-200), ECF No. 7-3 (2024 Warrant); and Order of Release on Recognizance (Form I-220A), ECF No. 7-4. *Id.*

The 2024 Warrant stated that Petitioner was "within the country in violation of the immigration laws and [wa]s therefore liable to being taken into custody as authorized by section 236 of the [INA]." 2024 Warrant. According to the Notice of Custody Determination, the CBP agent had "determined that" Petitioner, "pending a final administrative determination . . . , [would] be . . . [r]eleased . . . [o]n [his] own recognizance." ECF No. 7-2 (citing "the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations"). The Order of Release on Recognizance provided that, "[i]n accordance with section 236 of the [INA] . . . [Petitioner was] being released on [his] own recognizance," subject to certain conditions set forth in the Order. *See* ECF No. 7-4 (requiring, for example, that Petitioner "report for any hearing or interview as directed by the Department of Homeland Security or the Executive Office for Immigration Review"; "not change [his] place of residence

2

without first securing written permission from [an] immigration officer"; and "not violate any local, State, or Federal laws or ordinances"). "CBP also prepared a Record of Deportable/Inadmissible Alien," Dawson Decl. ¶ 6, which stated that Weng had "admitted to illegally crossing the international boundary . . . without being inspected by an immigration officer." 2024 Record at 3.

On November 15, 2024, Petitioner reported to a scheduled Immigration and Customs Enforcement ("ICE") check-in at 26 Federal Plaza, New York, New York. Dawson Decl. ¶ 8. His next check-in was scheduled for approximately one year later, on November 17, 2025. *Id*. On January 3, 2025, Petitioner filed an application for asylum. *Id*. ¶ 9; *see* ECF No. 16 (Hr. Tr.) at 18:5-9.

On November 17, 2025, when Petitioner reported for his scheduled check-in, ICE "revoked Petitioner's order of release on recognizance, and took him into custody at 26 Federal Plaza, pursuant to INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A)." Dawson Decl. ¶ 10; Pet. ¶ 2. "During processing, Petitioner was served with a Warrant for Arrest of Alien (Form I-200), [ECF No. 7-6 (2025 Warrant)]; 'Important Information about Section 236(a) Initial Decisions' form, [ECF No. 7-7]; and a list of pro bono legal service providers." Dawson Decl. ¶ 10.

B. Procedural History

Petitioner commenced this action on November 17, 2025, immediately following his detention at 26 Federal Plaza in Manhattan. *See* Pet ¶ 10.[2] On November 21, 2025, pursuant to

---

[2] The next day, ICE transferred Petitioner to Delaney Hall Detention Facility in Newark, New Jersey, where long-term bedspace for him had been secured. Dawson Decl. ¶ 12. On November 21, 2025, Petitioner was transferred to the Metropolitan Detention Center in Brooklyn, New York. *See* ECF No. 12. These "transfer[s] do[] not deprive this Court of subject matter jurisdiction." *See, e.g., Sun v. Almodovar*, No. 25 Civ. 9262 (PKC), 2025 WL 3241268, at *1 n.1 (S.D.N.Y. Nov. 20, 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 441 n.14 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction . . . .")); Hr. Tr. 5:3-5.

3

the Court's Order to Answer, ECF No. 3, Respondents filed a return, ECF No. 7, and a memorandum of law in opposition to the petition, ECF No. 9 (Opp.). Petitioner replied on November 23, 2025. *See* ECF No. 10 (Reply). The Court held a hearing on the petition on November 25, 2025. *See generally* Hr. Tr. On December 3, 2025, Petitioner notified the Court that his "final asylum hearing" had been scheduled for December 23, 2025, ECF No. 14, and on January 2, 2026, the parties wrote jointly that "the immigration court [had] granted Petitioner's request for a continuance . . . and the hearing was adjourned to January 23, 2026," ECF No. 22.

## II. LEGAL STANDARDS

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4). "This jurisdiction extends to claims by noncitizens like [Petitioner] who challenge the constitutionality or statutory authorization of their detention—at least so long as the arguments do not relate to the ultimate question of removability or to unreviewable discretionary determinations." *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *2 (S.D.N.Y. Nov. 21, 2018).

## III. DISCUSSION

Petitioner argues that Respondents have violated his statutory and constitutional rights by detaining him pursuant to Section 1225, given that, in 2024, Respondents released him into the United States on his own recognizance pursuant to Section 1226. *See* Pet. ¶¶ 28-32; 33-37; 39. Section 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that, "pending such decision, the

4

Attorney General . . . may release the alien on . . . bond . . . or conditional parole." 8 U.S.C. §§ 1226(a)(2)(a)-(b); *see* 8 C.F.R. § 236.1(d)(1) (addressing appeals from custody decisions).

In contrast, Section 1225 provides for *mandatory* detention and does not "say[] anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Respondents contend that "Petitioner is lawfully detained pursuant to Section 1225(b)" and that he is "not entitled to a bond hearing." Opp. at 7. In the alternative, according to Respondents, ICE "has authority to detain Petitioner pursuant to Section 1226(a)," *id.* at 28, and Petitioner "would be entitled to receive a bond hearing in immigration court for a determination [of] whether he presents a danger to others or a risk of flight," *id.* at 26.

### A. Petitioner Is Lawfully Detained Pursuant to Section 1225(b).

Section 1225(a)(1) provides:

> **Aliens treated as applicants for admission**. An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1).

A change to the INA in 1996 illuminates the meaning of this provision. Until then, the "exclusion" and "deportation" of aliens had "turned on 'whether an alien [was] already here.'" *Chen v. Almodovar*, No. 25 Civ. 8350 (MKV), 2025 WL 3484855, at *5 (S.D.N.Y. Dec. 4, 2025) (quoting *Judulang v. Holder*, 565 U.S. 42, 45 (2011)). In 1996, however, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), pursuant to which "'the pivotal factor in determining an alien's status' would be 'whether or not the alien ha[d] been *lawfully admitted*.'" *Id.* at *6 (internal citations omitted) (emphasis added). That applies equally to "arriving aliens (i.e., aliens who have not yet entered) and aliens who are already

5

present in the United States but did not enter lawfully." *Id.* "Under the current scheme," the statute expressly defines "admission" and "admitted," for purposes of Section 1225(a)(1), as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* at *3 (quoting 8 U.S.C. § 1101(a)(13)(A) (emphasis added)).

Section 1225(b)(2) states that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "In light of the definitions set forth above, Section 1225(b)(2) provides [for] mandatory detention 'in the case of' any alien who either is already '*present* in the United States' but has not been authorized lawfully to be here, or who arrives at the border." *Chen*, 2025 WL 3484855, at *3.

As an "alien present in the United States who has not been admitted"—i.e., who has not *lawfully* entered, *see* 8 U.S.C. § 1101(a)(13)(A)—Petitioner is "deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1); *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien who tries to enter the country illegally is treated as an 'applicant for admission' . . . and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'"); *Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, No. 25 Civ. 2582 (AS), 2025 WL 2858422, at *4 n.2 (S.D.N.Y. Oct. 9, 2025) (commenting, in addressing the duration of detention under Section 1225(b)(1), that "parole does not effect an entry for an individual stopped at or near the border"). And as previously noted, "the examining immigration officer determine[d] that [Petitioner] [wa]s not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see supra* at Section I.A (citing, for example, the 2024 Warrant stating that Petitioner was "within the country in violation of the immigration laws"). Indeed, Petitioner "admitted to illegally crossing the international boundary on 11/09/2024" and

6

was "placed in removal proceedings." 2024 Record at 3; *see* Reply at 9 (conceding that Petitioner was "charged with removability as a noncitizen present without being admitted . . . ."). Thus, Petitioner "shall be detained" pending resolution of his removal proceedings. *See* 8 U.S.C. § 1225(b)(2)(A).

Numerous judges in this District have concluded that Section 1226(a), as opposed to Section 1225(b)(2), governs detention under these circumstances. *See, e.g., Yao v. Almodovar*, No. 25 Civ. 9982 (PAE), 2025 WL 3653433, at *3 (S.D.N.Y. Dec. 17, 2025); *Barco Mercado v. Francis*, No. 25 Civ. 6582 (LAK), 2025 WL 3295903, at *4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *Tumba Huamani v. Francis,* No. 25 Civ. 8110 (LJL), 2025 WL 3079014, at *2-6 (S.D.N.Y. Nov. 4, 2025). Although "none of these decisions by other district judges is binding here," *Barco Mercado*, 2025 WL 3295903 at *4, the Court has carefully reviewed them. These cases hold that Section 1226(a) controls based on "the text of Section 1225 itself; [] the context and overall statutory scheme; [] the amendment history of Section 1226, including an amendment enacted just months ago [i.e., the Laken Riley Act, Pub. L. No. 119-1, codified at 8 U.S.C. §1226(c)(1)(E)]; and (until [last] year) the Executive Branch's own longtime understanding of the statutory scheme." *Cardenas v. Almodovar*, No. 25 Civ. 9169 (JMF), 2025 WL 3215573, at *2 (S.D.N.Y. Nov. 18, 2025) (collecting cases); *see, e.g., Tumba Huamani*, 2025 WL 3079014, at *2-6 (considering, *inter alia*, the "statutory definition of an 'applicant for admission'" and the Laken Riley Act); *J.G.O. v. Francis*, No. 25 Civ. 7233 (AS), 2025 WL 3040142, at *2-4 (S.D.N.Y. Oct. 28, 2025) (analyzing "the text of the statute," the statute's "context" and "overall statutory scheme," and "§ 1226's amendment history"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486-490 (S.D.N.Y. 2025) (weighing, *inter alia*, "the statute's present-tense active language," "the 2025 amendment" to the INA, and "how [the INA] has been enforced historically").

*The Text of Section 1225.* Some courts have ruled that an alien who is "already in the country" is not an "applicant for admission" subject to detention under Section 1225(b)(2). *Lopez Benitez,* 2025 WL 2371588, at *4 (quoting *Jennings*, 583 U.S. at 289); *accord J.G.O.*, 2025 WL 3040142, at *3; *Tumba Huamani*, 2025 WL 3079014, at *3. That reading of Section 1225 does not square with the INA's definitions of "admitted" and "admission," which, as discussed, refer to "*lawful*" entry, 8 U.S.C. § 1101(a)(13)(a) (emphasis added)—not to "whether 'an alien [was] already here,'" *Chen*, 2025 WL 3484855, at *3 (quoting *Judulang*, 565 U.S. at 45); *see also id.* at *5 ("Congress' decision, codified in the IIRIRA, . . . focused on *lawful admission* in contrast to physical entry.").

In addition, these courts have construed Section 1225(b)(2) as imposing a third requirement for mandatory detention: not only that (1) "[t]he alien . . . be 'an applicant for admission'" and that (2) "an immigration officer . . . determine that the applicant 'is not clearly and beyond a doubt entitled to be admitted,'" *J.G.O.*, 2025 WL 3030142, at *3, but also that (3) "the alien actively seek admission." *Id.* They have then decided that an alien who is "already here" "cannot 'seek admission.'" *Id.*; *see, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 488; *Tumba Huamani*, 2025 WL 3079014, at *3. But the term "applicant for admission" in Section 1225 is defined to include an "alien *present* in the United States who has not been admitted," 8 U.S.C. 1101(a)(13)(A) (emphasis added), and thus explicitly encompasses aliens who are "already here." In any event, interpreting the "seeking admission" language of Section 1225(b)(2) as imposing an additional requirement for mandatory detention would appear to "establish a perverse system in which an alien becomes subject to harsher treatment only upon actively seeking 'lawful' status," *Chen*, 2025 WL 3484855, at *5, such as by applying for asylum. Reading the phrases "applicant 'for admission'" and "seeking admission" as synonymous, however, "maintains the dichotomy prescribed by Congress . . . by distinguishing between those

8

who effectuate a lawful entry (even if later found removable) and are subject to Section 1226, and those who illegally entered and are statutorily deemed to be applicants for admission subject to Section 1225."[3]  Opp. at 19.

*The Context and Overall Statutory Scheme.*  Other courts have emphasized that "[e]ntry has long been understood to mean a crossing into the territorial limits of the United States." *Goorakani v. Lyons*, Nos. 25 Civ. 9456 (DEH), 25 Civ. 9551 (DEH), 25 Civ. 9592 (DEH), and 25 Civ. 9952 (DEH), 2025 WL 3632896, at *9 (S.D.N.Y. Dec. 15, 2025) (citing *Pie v. Noem*, No. 25 Civ. 1564, 2025 WL 3496156, at *5-6 (S.D. Mich. Dec. 5, 2025)).  Applying that reasoning to Section 1225(b)(2), asylum seekers present in the United States cannot be viewed as "seeking admission" because they have already *physically entered* the country.  *Goorakani*, 2025 WL 3632896, at *9 ("Obviously, one can 'enter' the country lawfully (i.e., 'admission'), or unlawfully.").  Instead, according to these courts, applicants for asylum "seek a lawful means to *remain* in the United States," *id.*, and, thus, are not "applicants for admission" within Section 1225.  This "hair-splitting emphasis on the phrase 'seeking admission' elevates form over substance."  *Goyo Martinez v. Villegas*, No. 25 Civ. 256 (JWH), 2026 WL 114418, at *3 (N.D. Tex. Jan. 15, 2026).  As the Supreme Court explained in *Jennings*, "[u]nder [Section 1225], an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"  583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)).  "[W]hen a statute includes an explicit definition, [the Court] must follow that definition."  *Id.*  (citing *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018)).

---

[3] Some courts have stated that the more expansive reading of Section 1225(b) "narrow[s] § 1226(a) such that it would have extremely limited (if any) application."  *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 490 and *Tumba Huamani*, 2025 WL 3079014, at *4.  But as those courts acknowledge, Section 1226(a) would continue to apply to the "subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully," *Lopez Benitez*, 795 F. Supp. 3d at 490.

*Amendment History of Section 1226.*  The Court is not persuaded that its reading of Section 1225 renders the Laken Riley Act, a recent amendment to Section 1226(c), "superfluous," *see* Reply at 10.[4]  The Laken Riley Act made detention mandatory for certain additional aliens who are deemed "inadmissible" under particular statutes and are "charged" with, "arrested for," "convicted of," or "admit[]" to specific offenses, including "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . or any crime that results in death or serious bodily injury to another person."  8 U.S.C. § 1226(c)(1)(E)(ii).  Petitioner argues that, "[i]f [S]ection '1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding [the Laken Riley Act] to the statutory scheme was pointless.'"  Reply at 10 (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 784 (E.D. Mich. 2025)).  That argument, however, "reverses the order of events," considering that the Laken Riley Act was passed on January 29, 2025, "before the new interpretation of Section 1225 was issued" on July 8, 2025.[5]  *Valencia v. Chestnut,* No. 25 Civ. 01550 (WBS) (JDP), 2025 WL 3205133, at *4 (E.D. Cal. Nov. 17, 2025).  The Laken Riley Act therefore was not "pointless."  Reply at 10.

In any case, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."  *Cabanas v. Bondi*, No. 25 Civ. 04830, 2025 WL 3171331 (CE), at *6 (S.D. Tex. Nov. 13, 2025) (citing *Peavy v. WFAA-TV, Inc*, 221 F.3d 158,

---

[4] Section 1226(c) provides for the "detention of criminal aliens . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).

[5] On July 8, 2025, the Department of Homeland Security, in coordination with the Department of Justice, issued a policy memorandum that "require[ed] all 'applicants for admission' . . . to be mandatorily detained during removal proceedings pursuant to § 1225(b)(2)." *Valencia*, 2025 WL 3205133, at *4.  This position was adopted by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

169 (5th Cir 2000)). When the Laken Riley Act was enacted, it did have such an effect, "given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it—under either § 1225 or § 1226—by longstanding practice of prior Administrations." *Id.* That application reflects that Congress sought "to narrow aspects of the discretion available to any Administration prioritizing removal proceedings toward § 1226"—not that the Laken Riley Act "undercuts the more fulsome, executive authority that Congress provided to exist independently under the text of § 1225(b)(2)(A)." *Id.*

Under the Court's reading of Section 1225—that "alien[s] present in the United States who ha[ve] not been admitted" are "applicants for admission" subject to mandatory detention—the Laken Riley Act also applies to "noncitizens who are lawfully admitted . . . and who then remain present unlawfully" and are charged with one or more of the enumerated crimes. *See Chen*, 2025 WL 3484855, at *7. "The statutory carve-out added by the Laken Riley Act does not therefore strike this [C]ourt as inherently nullified by [R]espondents' interpretation, which may in fact be 'performing the work' that was begun by the Act, that is, preventing individuals like the one who killed Laken Riley from benefitting from the discretionary detention provision of Section 1226." *Valencia*, 2025 WL 3205133, at *4.

To the extent that the Laken Riley Act caused Section 1225 and Section 1226 to overlap in part, this would hardly be the first time that Congress "employ[ed] a belt and suspenders approach" to legislation. *Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) (concluding that jurisdictional provisions of the Comprehensive Environmental Response, Compensation, and Liability Act are "somewhat redundant"). "[R]edundancies are common in statutory drafting" and may be created "in a congressional effort to be doubly sure." *Barton v. Barr*, 590 U.S. 222, 239 (2020) (concluding that "the redundant statutory reference to [8 U.S.C.] § 1227(a)(2) should [not] cause [the Court] to entirely rewrite [8 U.S.C.] § 1229b"). And although

"the canon against superfluity 'applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times,'" it is "pretty weak when applied to acts of Congress enacted," as here, "at widely separated times." *Mejia Olalde v. Noem,* No. 25 Civ. 168 (JMD), 2025 WL 3131942, at *4-5 (E.D. Mo. Nov. 10, 2025) (quoting *Bilski v. Kappos*, 561 U.S. 593, 608 (2010), then citing *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999)); *see also Freytag v. C.I.R.*, 501 U.S. 868, 877 (1991) (expressing a "deep reluctance to interpret a statutory provision so as to render superfluous other provisions," even "*in the same enactment*"(emphasis added) (internal quotation marks omitted)); *United States v. Smith*, 100 F.4th 1244, 1250 n.6 (10th Cir. 2024) (explaining "we are not persuaded that the canon against superfluity stretches to after-the-fact legislation"). "The Laken Riley Act was passed [last] year—decades after the other relevant provisions—so the canon against superfluity does not apply strongly here." *Mejia Olalde*, 2020 WL 3131942, at *5 (concluding that the Laken Riley Act caused Section 1226 to "overlap" with Section 1225). For this reason, "sometimes the better overall reading of a statute contains some redundancy," and "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Chen*, 2025 WL 3484855, at *7.

    *Enforcement History.* Nor does the Court agree, in light of "the Executive Branch's traditional discretion over whether to take enforcement actions," *United States v. Texas*, 599 U.S. 670, 684 (2023)—which "extends to the immigration context," *id.* at 679—that Respondents waived the right to enforce Section 1225(b)(2) by "consistently treat[ing] [Petitioner] as subject to § 1226," *Lopez Benitez*, 795 F. Supp. 3d at 486. *See Candido v. Bondi*, No. 25 Civ. 867 (JLS), 2025 WL 3484932, at *4 (W.D.N.Y. Dec. 4, 2025) (concluding that applying Section 1225(b)(2) to "aliens who enter the United States illegally—and remain illegally" is "consistent with the primacy of the political branches in this area of law").

### B. Petitioner's Current Detention Does Not Violate Due Process.

"Aliens, of course, are entitled to due process." *Zheng v. Mukasey*, 552 F.3d 277, 286 (2d Cir. 2009) (quoting *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)). But applicants for admission "stand[] on a different footing." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Specifically, applicants for admission, including noncitizens who are conditionally paroled into the United States, "are 'treated,' for due process purposes, 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139 (quoting *Mezei*, 345 U.S. at 212). Even aliens who are "*paroled elsewhere in the country for years pending removal . . . are 'treated'*" as such. *Id*. at 140 (quoting *Mezei*, 345 U.S. at 215) (emphasis added). "A 'parolee,' even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution." *Liang v. Almodovar*, No. 25 Civ. 09322 (MKV), 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025) (quoting *United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967). Accordingly, for an applicant for admission such as Petitioner, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Mezei*, 345 U.S. at 212; *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d. Cir. 1984) ("Although aliens who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants.").

Petitioner concedes that he "entered the United States on or about November 9, 2024 without having been paroled or admitted" and was "charged . . . with removability.'" Pet. ¶ 1. Thus, "[n]otwithstanding . . . that Petitioner did indeed cross into the United States frontier, or that he was thereafter permitted to go deeper into 'our country and begin[] to develop the ties that go with permanent residence,'" *Liang*, 2025 WL 3641512, at *5 (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)), Petitioner "remains 'on the threshold of initial entry,' as a matter of law," *id.* (quoting *Mezei*, 345 U.S. at 212).

13

Petitioner maintains that his 2025 detention violates his right to due process because "ICE released Petitioner on his own recognizance [in 2024] pursuant to [S]ection 1226(a)" and made "no individualized determination as to factors such as his flight risk or dangerousness occurred before . . . [re-]arrest[ing] him." Reply at 12. That argument fails under Section 1226 itself. Section 1226(b) provides that the Government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).[6] The statute "does not say . . . that if an alien is released pursuant to Section 1226 any rearrest must also be made pursuant to Section 1226 with any attendant protections under that statute." *Chen*, 2025 WL 3484855, at *8. "Whatever 'grace' Congress and the Executive Branch have thus far bestowed upon Petitioner," *Liang,* 2025 WL 3641512, at *6, including more than a year of conditional parole, it "bestows no additional rights." *Id.* (quoting *Mezei*, 345 U.S. at 215). Moreover, "Petitioner has been on notice since his arrival in this country that he does not have a right to remain here and is 'subject to removal' because, as he concedes, he is an 'alien present in the United States without being admitted or paroled." *Chen*, 2025 WL 3484855, at *7; NTA; Pet. ¶ 1 ("On or about November 10, 2024, DHS served Petitioner with a Notice to Appear . . . which designated him as 'an alien present in the United States who has not been admitted or paroled' and charged him with removability . . . ."); *see* Reply at 8; 2024 Record at 3 (Petitioner "admit[ing] to illegally crossing the international boundary on 11/09/2024").

---

[6] Here, Respondents note, without explanation, that "Petitioner's 2025 arrest was under the original warrant" and that "ICE issued a second warrant on November 17, 2025." ECF No. 20; ECF Nos. 7-3 (2024 Warrant) and 7-6 (2025 Warrant). Petitioner asserts that the re-arrest was unlawful "[r]egardless of which Warrant for Arrest [Petitioner] was arrested under," because "the fact remains that the Government re-detained Petitioner under section 1226(a)." ECF No. 19 at 4.

Furthermore, "because Petitioner cannot establish a statutory right to a bond hearing, the failure to provide a bond hearing does not constitute a violation of due process." *Ramos v. Lyons*, No. 25 Civ. 09785 (SVW), 2025 WL 3199872, at *8 (C.D. Cal. Nov. 12, 2025); *see Thuraissigiam*, 591 U.S. at 138-140 (explaining that an alien who has never been lawfully admitted to the United States "has only those rights regarding admission that Congress has provided by statute," and that "the Due Process Clause provides nothing more").

## IV.   CONCLUSION

For the foregoing reasons, the petition is denied in its entirety. The Clerk of Court is directed to close this case. The Clerk of Court is further directed to strike ECF No. 23.

SO ORDERED.

Dated: January 25, 2026
New York, New York

*[signature: Jennifer H. Rearden]*

JENNIFER H. REARDEN
United States District Judge